# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 492 | **DATE** | 5/26/2004 |
| **CASE TITLE** | Shea vs. Lovejoy, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reason given in the attached Memorandum Opinion and Order, the Court grants defendant's motion for summary judgment (doc.# 16) and directs the entry of summary judgment in favor of the defendant on Counts I and II. The Court dismisses Count III without prejudice to refiling the claim in state court.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | MAY 27 2004 date docketed | |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials |
| | Copy to judge/magistrate judge. | 2004 MAY 26 AM 10:15 | date mailed notice |
| mm7 | courtroom deputy's initials | Date/time received in Central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DENNIS SHEA, )
)
    Plaintiff, )
) No. 03 C 0492
vs. )
) Judge Sidney I. Schenkier
LOVEJOY, INC., an Illinois )
Corporation, )
)
    Defendant. )

**DOCKETED MAY 2 7 2004**

## MEMORANDUM OPINION AND ORDER[1]

On January 22, 2003, Dennis Shea filed a three-count complaint against the defendant, Lovejoy Inc., seeking relief under the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. § 623 *et seq.* (Count I); the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a) (Count II); and the Illinois Wage Act ("IWA" or "Wage Act"), 820 ILCS 5/140 *et seq.* (Count III), invoking the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a) for that state law claim. The defendant has filed a motion for summary judgment on all three counts. For the reasons that follow, the Court grants the defendant's motion for summary judgment on Counts I and II. With all federal claims having been dismissed without trial, the Court declines to exercise supplemental jurisdiction over the state law claim in Count III. *See* 28 U.S.C. § 1367(c)(3); *Bean v. Wisconsin Bell, Inc.*, __ F.3d __, No. 03-1983, 2004 WL 877570, * 4 (7th Cir. Apr. 26, 2004).

---

[1] On July 10, 2003, pursuant to 28 U.S.C. § 636(c) and the consent of the parties, this case was reassigned to this Court to conduct all proceedings including the entry of final judgment (doc. #s 7-9).

## I.

Summary judgment is proper if the record shows that there is no genuine issue as to any material fact, and that the moving parties are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue for trial exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50; *see also Flip Side Productions, Inc. v. Jam Productions, Ltd.*, 843 F.2d 1024, 1032 (7th Cir.), *cert. denied*, 488 U.S. 909 (1988). In deciding a motion for summary judgment, the Court must view all evidence in the light most favorable to the nonmoving party, *Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656, 659 (7th Cir.), *cert. denied*, 484 U.S. 977 (1987), and must draw all reasonable inferences in the nonmovant's favor. *Santiago v. Lane*, 894 F.2d 218, 221 (7th Cir. 1990).

When a material fact or a set of facts yields competing, but reasonable, inferences, then there is a genuine issue that precludes summary judgment. The non-moving party's burden is to identify facts that are both material and genuinely disputed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) To be material, a fact must be outcome determinative under the substantive law governing the motion. *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A "genuine issue" exists when the party opposing the motion for summary judgment serves and files, pursuant to local Rule 56.1, a concise statement outlining the material facts that require denial of summary judgment, supported by citations to the evidentiary materials that support those denials (*e.g.*, affidavits, depositions, answers to interrogatories, admissions etc.). Fed. R.Civ.P. 56(c). Although the party seeking summary judgment bears the initial burden of proving that there is no genuine issue of

material fact, *Celotex*, 477 U.S. at 323, the non-moving party cannot rely upon the pleadings alone, but must use the evidentiary tools outlined above to identify the material facts that show there is a genuine issue for trial. *Id.* at 324; *Insolia*, 216 F.3d at 598.

## II.

The following material facts are undisputed. These facts support the entry of summary judgment in defendants' favor on Counts I and II of plaintiff's complaint.[2]

### A. *The Parties & Personnel.*

The plaintiff, Dennis Shea was born on January 6, 1944 (Defendant's Rule 56.1 Statement of Undisputed Facts ("Def.'s 56.1 St." ¶ 3. Lovejoy, Inc., is an Illinois corporation which manufactures power transmission products (*Id.* ¶ 4). On June 4, 1997, Lovejoy offered plaintiff a position as National Sales Engineer responsible for Original Equipment Manufacturer ("OEM") customer accounts (*Id.*, ¶ 14). Plaintiff was 53 years old when Lovejoy offered him the job in 1998 (*Id.* ¶ 15). The plaintiff's job responsibilities included providing technical support for Lovejoy's nationwide sales force, and selling the full range of Lovejoy products to major OEM accounts (Def.'s 56.1 St. ¶ 19).

Jim Minton, Vice President of Sales, and Ellen Grossberg, Vice President of Human Resources, interviewed and hired plaintiff for this position at Lovejoy (Def.'s 56.1 St., ¶ 14). Jim Minton was born on December 13, 1940, and is three years older than plaintiff (*Id.* ¶ 21). At the time of his hire, Mr. Minton was plaintiff's immediate supervisor (*Id.* ¶ 20).

---

[2]The Court does not make findings on the facts related to Count III because we find, for the reasons given *supra*, that Count III should be remanded to the state court.

As a result of a management reorganization in October, 2000, Chuck Brannen assumed the position of OEM Sales Manager, and became plaintiff's immediate supervisor (*Id.* ¶ 62). Mr. Brannen was born on January 6, 1944, and is exactly the same age as plaintiff (*Id.* ¶ 63). Prior to his promotion to OEM Sales Manager, Mr. Brannen held the same position as plaintiff, National Sales Engineer (*Id.* ¶ 64).

As a further result of the October 2000 reorganization of management, Doug Durham assumed the position of North American Sales Director, and became the immediate supervisor of Brannen. Mr. Durham was born on April 15, 1954 (*Id.* ¶ 65), and is ten years younger than plaintiff. Consequently, as of October 2000, plaintiff reported to Mr. Brannen, who reported to Mr. Durham, who reported to Mr. Minton (*Id.* ¶ 66).[3]

### *B. Plaintiff's Medical Condition.*

As a child, plaintiff contracted polio and, as a result, walks with a limp. Since the age of 16, he has worn a brace on his left leg, but he has not had any other treatment for polio (Def.'s 56.1 St. ¶ 5). Plaintiff's childhood polio never restricted his employment; he never had any medical restrictions for his employment; and he never needed an accommodation to perform a job (*Id.* ¶ 6). Plaintiff's childhood polio also does not impede or restrict his ability to travel. Indeed, plaintiff regularly traveled in his job with Lovejoy and he travels to his vacation home in Ireland each summer (Def.'s 56.1 St. ¶ 7). Plaintiff owns and operates his own sailboat, is able to walk long distances, and regularly climbs stairs (*Id.* ¶ 8). Plaintiff drives a car and does not use a handicapped sticker (*Id.*

---

[3]Plaintiff claims that Dave Mortenson, the Vice President of Marketing, was his supervisor by the time of plaintiff's termination (Pl.'s Mem. at 1; Pl.'s Rule 56.1(b)(3) St. ¶ 15). Although there is undisputed testimony that Mr. Durham reported to Mr. Mortenson (Def.'s Ex. 21, Mr. Mortenson Dep. at 18), as well as to Mr. Minton (Def.'s Tab A, Minton Decl. ¶ 15); we find no evidence that Mr. Mortenson played any role in supervising plaintiff. What's more, the uncontroverted sworn testimony is that Mr. Mortenson was not involved in the decision to terminate plaintiff (Def.'s Tab C, Decl. of Charles Brannen, ¶ 15; Tab D, Decl. of Doug Durham, ¶ 8).

at ¶ 9). Plaintiff's leg brace only restricts him from certain recreational activities such as golfing, jogging and bowling (*Id.* at ¶ 10). The plaintiff admits that his limp does not affect his job performance or any life function (*Id.* at ¶ 11).

### C. The 1998 Performance Review.

Plaintiff received a performance review in August 1998 for the period of June 23, 1997 to June 23, 1998 (the "1998 review") (Def.'s 56.1 St., ¶ 28), which was prepared by Mr. Minton (*Id.*, ¶ 29). Plaintiff's overall performance rating in the 1998 review was 7 on a 12-point scale, which corresponds to the low end of the "above average" category (*Id.*, ¶ 30). As a result of the 1998 review, plaintiff received a 4.5 percent raise in base salary (*Id.*, ¶ 31). The 1998 review established goals for plaintiff to accomplish in the following year, including being a major part of Lovejoy's efforts to implement a customer contact management software program (*Id.*, ¶ 32). The plaintiff testified that he believes the 1998 review was a fair and accurate assessment of his performance and that it was not the product of discrimination by Mr. Minton (*Id.*, ¶ 33).

### D. The 1999 Performance Review.

Plaintiff received a performance review for the period of June 23, 1998 to June 23, 1999 (the "1999 Review") (Def.'s 56.1 St., ¶ 34). As was true in 1998, Mr. Minton prepared plaintiff's 1999 review (*Id.*, ¶ 35). Plaintiff's overall performance rating in the 1999 review again was a 7 on a 12-point scale, which corresponds to the low end of the "above average" category (*Id.*, ¶ 36). As a result of the 1999 Review, plaintiff received a 4.0 percent increase in his base salary (*Id.*, ¶ 37). In the 1999 Review, Mr. Minton criticized plaintiff for not adequately servicing his accounts and for only promoting two of Lovejoy's six product lines (*Id.*, ¶ 38). Mr. Minton also criticized plaintiff for poor interactions with other Lovejoy personnel who perform work for his accounts, and for failing "to

reach out and become more proactive in being an OEM account leader by bringing opportunities to light so that others can learn from them" (*Id.*, ¶¶ 39-40). In particular, Mr. Minton criticized plaintiff for failing to communicate well with Ed Zdanowski, Lovejoy's Quality Control Manager, stating "I see no pro-activeness on Dennis's part to correct this" (*Id.*, ¶ 41).

The 1999 Review included performance goals for plaintiff for the following year. During 2000, plaintiff was expected to increase his sales by at least 12.5 percent, despite the fact that plaintiff lost the John Deere-Augusta account (Def.'s 56.1 St., ¶ 42). It is standard practice at Lovejoy for a sales representative to be required to meet increased sales goals, despite the loss of accounts (*Id.*, ¶ 43). Although plaintiff testified that he disagreed with some criticisms of his performance, he admits that the 1999 Review was not the product of discrimination by Mr. Minton (*Id.*, ¶ 44).

### E. *The Plaintiff's 2000 Performance Review.*

Mr. Minton prepared a performance review of plaintiff for the period of June 23, 1999 to June 23, 2000 (the "2000 Review") (Def.'s 56.1 St., ¶ 45-46). In this review, plaintiff received an overall performance rating of 3.5 on a 12-point scale, putting him on the borderline of "below average" and the low point of "average" (*Id.*, ¶ 47). The 2000 Review form states that a 3 rating is "below average," meaning that the employee's "job performance skills need to be developed toward higher standards of performance which are expected for this position . . . [and] [a] development plan should . . . be established to encourage an increased level of performance and a change of rating within 12 months" (*Id.*, ¶ 48).

The plaintiff's sales for 2000 were down from 1999, due in part to the loss of the John Deere-Augusta account (Def.'s 56.1 St., ¶ 49). In the 2000 Review, Mr. Minton again criticized plaintiff

for not promoting the full line of Lovejoy products, stating that plaintiff "has not stepped up to get other Lovejoy products into his accounts despite making this a priority goal for the year 2000" (*Id.*, ¶ 50). Plaintiff admits that he failed to meet Mr. Minton's expectations that he sell Lovejoy's entire product line (*Id.*, ¶ 51). In the 2000 Review, Mr. Minton criticized plaintiff for failing to promote the Rosta line of products for application at his OEM accounts, stating, "Dennis has shown no effort to get it [Rosta] promoted in his area" (*Id.*, ¶ 52).[4]

Mr. Minton further criticized plaintiff's interactions with other Lovejoy personnel, stating that plaintiff "is reluctant to 'make things happen' at Lovejoy[,]" and he is not "being proactive to make sure it gets done" (*Id.*, ¶ 53). Mr. Minton criticized plaintiff's lack of initiative in his position, stating: "Dennis should be our OEM leader, but he is not" (*Id.*, ¶ 54). Mr. Minton also expressed concerns related to plaintiff's work volume, stating that plaintiff's "account responsibility is very light," and yet, he has not been "motivated to request additional work or to become a leader" (*Id.*, ¶ 55). Finally, Mr. Minton criticized plaintiff for failing (a) to be a leader in the customer relationship management software program, which Minton stated, "has not happened"; and (b) to address his poor relationship with Ed Zdanowski, stating that there "continues to be an irritation between the two" and there has been "no proactiveness on Dennis's part to correct this" (*Id.*, ¶¶ 56-57). Mr. Minton concluded that plaintiff had attained none of the four goals set in his 1999 review (*Id.*, ¶ 59).

Plaintiff admits that he failed to meet Mr. Minton's expectations that he share his expertise regarding Lovejoy products and applications with other Lovejoy sales representatives, and that he

---

[4]Although plaintiff admits that Mr. Minton made this critical remark, he does not admit the criticism accurately stated the facts (Pl.'s 56.1(b)(3)(b) St., ¶ 1).

7

input information regarding his customers and account activity into a company-wide customer relations management software program, Prevail (Def.'s 56.1 St. ¶ 58). Moreover, although plaintiff disagrees with some of Mr. Minton's criticisms of his performance, plaintiff admits that he does not believe the 2000 performance review was motivated by discrimination (*Id.* ¶ 60). In the 2000 review, plaintiff's goals for 2001 largely mirrored those of the prior year, with a focus on expanding his efforts to promote the full line of Lovejoy products and on utilizing Prevail to become more organized in his sales approach and communicate better with others at Lovejoy (*Id.*, at ¶ 60).

### *F. Plaintiff's 2001 Performance Review.*

Plaintiff received a performance review for the period of June 23, 2000 to May 25, 2001 (the "2001 Review") (Def.'s 56.1 St. ¶ 68). As a result of the October 2000 reorganization, Mr. Brannen – rather than Mr. Minton – prepared plaintiff's 2001 review. However, Mr. Durham and Mr. Minton also reviewed plaintiff's performance, provided input to Mr. Brannen with respect to the 2001 Review, and concurred with the performance evaluation, comments and rating prepared by Mr. Brannen (*Id.*, ¶ 69). In the 2001 review, plaintiff received an overall performance rating of 3 on the 12 point scale (*Id.*, ¶ 70) – compared to the 3.5 rating he had received the prior year from Mr. Minton.

The 2001 Review noted that plaintiff's sales in 2001 were down 12.5 percent from his 2000 sales (Def.'s 56.1 St., ¶ 71). Mr. Brannen criticized plaintiff for poor communication with other employees, stating: "Dennis needs to start sharing his knowledge, successes and failures with our inside personnel" (*Id.*, ¶ 72). Plaintiff also criticized for his poor initiative, stating that plaintiff "ha[d] been reluctant to ask for additional assignments" (*Id.*, ¶ 73). In the 2001 Review, plaintiff's performance on customer accounts was criticized; the review stated that Lovejoy has "been caught

8

unaware in a number of cases over the last year . . . [and plaintiff] . . . didn't exhibit interest in establishing a supplier communications program with Caterpillar-Aurora" (*Id.* ¶ 74). Mr. Brannen further criticized plaintiff's "spotty" usage of Prevail, stating that "[f]ull utilization of Prevail scheduling, activity reporting, and 'to do' items must be started," and that, "this employee needs to become better acquainted with the Prevail system to enhance his organizational skills." And, plaintiff was again criticized for not sharing information with fellow employees (*Id.*, ¶ 76), or for selling the full range of Lovejoy's products (*Id.*, ¶ 77).

Plaintiff admits his Prevail usage was "spotty" (Def.'s 56.1 St., ¶ 75). Many of the criticisms cited in the 2001 performance review were the same criticisms that Minton had cited in prior reviews.

Following the 2001 Review, Mr. Brannen met or conferred with plaintiff on a weekly basis to assess plaintiff's progress in specific performance areas. For example, each week, Mr. Brannen reviewed with plaintiff whether he had scheduled appointments with clients for the upcoming two weeks, entered customer data into Prevail, and prepared the prior week's activity report (Def.'s 56.1 St. , ¶ 80). Commencing on June 4, 2001, Mr. Brannen maintained a performance matrix that tracked plaintiff's weekly performance in his sales activities, communications with clients and co-workers, and his use of Prevail (the "Performance Matrix") (*Id.*, ¶ 81). The defendant asserts that the Performance Matrix shows that plaintiff "*in general, was not adequately scheduling appointments with clients, was not communicating properly with clients and co-workers, and was not regularly entering customer and sales activity data into Prevail* (*Id.*, ¶ 82). This assertion is not disputed by any evidence in the record, and it accurately reflects the perception of Lovejoy management at the relevant time (Pl.'s Resp. ¶ 82; Def.'s Ex. 8).

During June and July 2001, Mr. Brannen accompanied plaintiff on several sales meetings with Lovejoy customers (Def.'s 56.1 St., ¶ 83). After accompanying plaintiff on those meetings, Mr. Brannen concluded that plaintiff was not successfully selling the full range of Lovejoy products, and in many cases was not even attempting to do so (*Id.*, ¶ 84). Other management personnel also had expressed concerns about plaintiff's job performance. In early 2001, Dick Deible, Lovejoy's Product Manager responsible for torsional products, had expressed his opinion to senior management at Lovejoy that plaintiff did not have sufficient familiarity with Lovejoy's products or customers (*Id.*, ¶ 85). Mr. Deible also told senior Lovejoy management that plaintiff had some responsibility for the loss of the work from Caterpiller-Aurora and John Deere-Augusta because he failed to timely learn of their plans to change suppliers (*Id.*, ¶ 86). Mr. Durham became concerned with plaintiff's job performance in 2000 and 2001 because plaintiff could not answer questions regarding key contacts in engineering, product development and other departments at major OEM customers for which he was responsible (*Id.*, ¶ 87).

In late July 2001, Mr. Brannen concluded that plaintiff had failed to improve his job performance. Specifically, Mr. Brannen concluded that plaintiff was not successfully selling the full range of Lovejoy products; was not properly or fully utilizing the Prevail system; was not effectively communicating with co-workers and customers; and was not well organized in his sales approach and dealings with Lovejoy clients (Def.'s 56.1 St., ¶ 88).[5] In July 2001, Mr. Brannen recommended to Ms. Grossberg (who had participated in hiring plaintiff in 1997) and Mr. Durham that plaintiff's employment be terminated (*Id.*, ¶ 89). Mr. Durham and Ms. Grossberg concurred with Brannen's

---

[5] Although plaintiff ostensibly disputes this fact, the dispute is about whether this conclusion was reached after Mr. Brannen counseled plaintiff. The existence or timing of counseling does not change the fact that the record supports that Mr. Brannen honestly held these views of plaintiff's job performance.

10

recommendation (*Id.*, ¶ 90). Mr. Brannen, Mr. Durham and Ms. Grossberg based their decision to terminate plaintiff's employment on his continued poor performance (*Id.*, ¶ 91).

On Friday, July 27, 2001, Mr. Brannen met with plaintiff, reviewed the Performance Matrix, and told plaintiff that his performance was deficient (Def.'s 56.1 St., ¶ 92). Plaintiff testified that "it was obvious that [Mr. Brannen] was unhappy" and plaintiff suspected that he might be terminated (*Id.*). On Monday, July 30, 2001, Mr. Brannen, Mr. Grossberg, and Mr. Mortenson met with plaintiff and informed him that his employment with Lovejoy was being terminated (*Id.*, ¶ 93). Mr. Mortenson attended plaintiff's termination meeting as department head in place of Mr. Durham who was not at Lovejoy's office that day (*Id.*, ¶ 94). Following plaintiff's termination meeting and in accordance with Lovejoy's established practice, Mr. Brannen prepared a memorandum setting forth plaintiff's performance deficiencies that caused his termination, which he sent to the other managers at the termination meeting (*Id.*, ¶ 95). Mr. Brannen assumed responsibility for the customer accounts previously assigned to Shea (*Id.*, ¶ 96).

### III.

Given these undisputed facts, the Court finds that Lovejoy is entitled to summary judgment on Counts I and II. With respect to Count I, the age discrimination claim under the ADEA, plaintiff has failed to establish a *prima facie* case of age discrimination. With respect to Count II, the disability discrimination claim under the ADA, plaintiff cannot establish that he has a statutory disability, and that he was terminated due to any disability.

### A.

Under the ADEA, it is unlawful for an employer to discharge any individual who is forty years of age or older because of such individual's age. 29 U.S.C. § 623(a). A plaintiff can prove that

he was discriminated against on the basis of age by either the direct or indirect method. *Richter v. Hook-SupeRx, Inc.*, 142 F.3d 1024, 1028 (7th Cir. 1998). Here, the plaintiff relies solely on the indirect method, using the burden-shifting method set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Under the indirect method, a plaintiff must first establish a *prima facie* case of age discrimination. If the plaintiff can establish a *prima facie* case, a burden of production then shifts to the defendant to articulate (through evidence) a legitimate, non-discriminatory reason for terminating the plaintiff. If the defendant articulates a non-discriminatory reason, the burden then shifts back to the plaintiff to demonstrate that the defendant's proffered reason was pretextual. *Miller v. Borden, Inc.*, 168 F.3d 308, 313 (7th Cir. 1999); *Richter*, 142 F.3d at 1028. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

To establish a *prima facie* case of age discrimination, a plaintiff must show that: (1) he was a member of the protected class; (2) he was meeting the defendant's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated differently than a similarly situated, substantially younger employee. *Richter*, 142 F.3d at 1028. To survive summary judgment, a plaintiff at the threshold must demonstrate a triable issue as to each element of the *prima facie* case. *Griffin v. Potter*, 356 F.3d 824, 828 (7th Cir. 2004).

There is no dispute that plaintiff here meets two of the four elements of the *prima facie* case: (1) the plaintiff is undisputably a member of the protected class, and (2) he suffered an adverse employment action. However, plaintiff has failed to offer facts to create a triable issue on the other

12

two elements of the *prima facie* case: that he satisfied the legitimate employment expectations of Lovejoy, and that he was replaced by a similarly situated and substantially younger person.

As to job performance, by the year 2000, plaintiff's overall job performance rating was 3.5 out of 12, ranking him on the borderline of below average to average. Plaintiff admits that this performance review was not a product of discriminatory animus - indeed, it was prepared by Mr. Minton, who had hired plaintiff a few years earlier and was older than plaintiff.[6] Plaintiff's 2001 review, in which he received a 3 out of 12 rating, repeated many of the same criticisms as the 2000 review. It was soon after this 2001 review and some additional attempts by Lovejoy management to help plaintiff improve his performance, that plaintiff was terminated. In light of this undisputed summary judgment record, plaintiff has failed to create a triable issue on the second element of the *prima facie* case.

Nor has plaintiff offered evidence that he was replaced by a substantially younger person. To the contrary, the undisputed facts indicate that plaintiff's responsibilities were assumed by Mr. Brannen, who was exactly the same age as the plaintiff. Plaintiff does not argue that Lovejoy's choice of Mr. Brannen to assume plaintiff's job duties was discriminatory. Instead, he states (citing *Collier v. Bud Company*, 66 F.3d 886): "Shea cannot point to a younger person who is similarly situated. He was not replaced at this time period. However, it is Shea's argument that the intention of Mortenson was clearly to replace him with a younger person who had no disability" (Pl.'s Mem. at 3). There are several problems with this argument. *First, Collier* does not stand for the

---

[6]Although the plaintiff disputes the correctness of the review, he does not offer evidence to show that the evaluations did not reflect the honest assessment of his supervisor. And, an employee's perception of his own performance is immaterial to the issue of whether he was performing up to the legitimate expectations of the employer; on that issue, it is the employer's honest perception, alone, that controls. *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 398 (7th Cir. 1998)(it is decision maker's perception of a plaintiff's performance, not his own, that is relevant).

13

proposition that "a person within the protected class does not have to be replaced by a younger person if he was fired with the intent to ultimately replace him based upon his age" – that was only a theory advanced by plaintiff that the district court held to be insufficient to support a *prima facie* case of age discrimination. *Second*, there is no evidence that: (1) Mr. Mortenson was the decision maker; or (2) that Mr. Mortenson (or any other decision maker) harbored such an intent.

What's more, this termination decision was made by Mr. Brannen, Mr. Durham, and Ms. Grossberg. Each of these individuals fell within the protected age group (over 40 years of age). The fact that one of these individuals (Ms. Grossberg) was involved in hiring the plaintiff four years earlier is strong evidence of nondiscrimination. *See Equal Employment Opportunity Comm'n v. Our Lady of Resurrection Med. Ctr.*, 77 F.3d 145, 148 (7th Cir. 1996) (affirming summary judgment, noting that "a person who intends to discriminate against minorities is unlikely to hire them in the first place"); *Fairchild v. Forma Scientific, Ind.*, 147 F.3d 567, 572 (7th Cir. 1998) (affirming summary judgment, stating that a plaintiff has a "tough row to hoe" when fired by a person older than himself). And, Lovejoy's decision to hire Mr. Brannen (who is plaintiff's age) in 1999, and to promote him in 2000, is further evidence that defendant harbors no discriminatory animus to persons due to their age. Plaintiff has offered nothing to counter the substantial evidence presented here of non-discrimination.

**B.**

The plaintiff's disability claim under the ADA also fails. The ADA prohibits covered employers from discriminating against qualified individuals because of their disability. *See Sieberns v. Wal-Mart Stores*, 125 F.3d 1019, 1021-22 (7th Cir. 1997). The ADA affords protection against two types of discrimination: disparate treatment of qualified, but disabled, employees; and failure

14

to provide reasonable accommodation for qualified, but disabled, employees. *Id.* Regardless of which type of discrimination plaintiff alleges, in order to recover under the ADA, the plaintiff must have a statutory disability. "Disability" is defined by the ADA as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2)). If the plaintiff's impairment falls under any one of these three subparts, then the plaintiff is considered disabled under the Act.

Plaintiff argues that he was disabled under the ADA, under Subpart C, because Lovejoy, through Mr. Mortenson, believed that polio – and its effect on plaintiff – rendered plaintiff disabled. In other words, plaintiff argues that his polio, which caused him to walk with a perceptible limp, created a belief in the mind of Mr. Mortenson that he was disabled and that such belief was the basis for his termination. Specifically, plaintiff argues that the "comments of Mortenson clearly create a material question of fact as to Lovejoy's motivation for termination of [plaintiff]" (Pl.'s Mem. at 3). The Court disagrees.

The comment that plaintiff offered as evidence of disability discrimination took place in the following context: In May or June 2001, plaintiff came to Mr. Mortenson's office, shortly after Mr. Mortenson assumed his position as VP of Marketing at Lovejoy. Plaintiff "apparently walked up to [Mr. Mortenson's] office and was standing at the door." According to Mr. Mortenson, plaintiff said he had not had a chance to meet him yet because he left the office early on Monday mornings. The plaintiff "explained that he was an OEM salesperson and traveled quite a bit and wanted to welcome [Mr. Mortenson] to Lovejoy." As plaintiff was leaving, Mr. Mortenson testified that he "noticed he was limping. And because it was Monday morning in May or June, weather was nice,

15

[he] said, 'Oh, did you hurt yourself over the weekend?" Plaintiff replied to Mr. Mortenson, "No. To tell you the truth, I had polio and wear a brace." Mr. Mortenson said, "Oh, you must travel a lot. I've been traveling a lot, too. Do you have any trouble getting through the airport with the brace?" And, plaintiff said: "No." And, Mr. Mortenson said: "Great." According to Mr. Mortenson, that was the end of their conversation. and the next time he saw plaintiff was the day he was terminated (Ex. 37, pp. 15-16).

There is no evidence offered by plaintiff to rebut Mr. Mortenson's testimony regarding the context or substance of this conversation. In fact, in his affidavit, plaintiff's own testimony on this conversation is consistent with Mr. Mortenson's deposition testimony (Pl.'s Ex. 1). The only difference is that the plaintiff drew inferences regarding Mr. Mortenson's intent that the Court finds unreasonable because they are not supported by the evidence. In the Court's view, this lone conversation could not serve as the basis for a reasonable juror to conclude that Mr. Mortenson harbored a discriminatory belief about the plaintiff sufficient to create a triable issue on the subject of a perceived disability by Lovejoy.[7]

Moreover, there is simply no evidentiary link offered between plaintiff's conversation with Mr. Mortenson and plaintiff's termination. Thus, even if Mr. Mortenson did perceive plaintiff as

---

[7]To the extent that plaintiff's brief suggests that he is disabled under Subpart A, that suggestion fails to create a triable issue on the question of disability. Subpart A requires, *inter alia,* that an impairment "substantially limit" a "major life activity." *See Webb v. Clyde L. Choate Mental Health and Development Center,* 230 F.3d 991, 997 (7th Cir. 2000). To qualify as "substantially limiting" the major life activity of working, the plaintiff's ability to perform not just his or her current job, but a class or a broad range of jobs, must be significantly reduced. *See id.* at 998 (citing *Weiler v. Household Finance Corp.,* 101 F.3d 519, 525 (7th Cir.1996)). If the plaintiff's condition does not rise to the level of a statutory disability, then he cannot prevail on his claim even if the defendant terminated him expressly because of his condition. *See Sinkler v. Midwest Property Management Ltd. Partnership,* 209 F.3d 678, 683 (7th Cir. 2000); *Christian v. St. Anthony Med. Ctr., Inc.,* 117 F.3d 1051, 1053 (7th Cir. 1997) ("The Act is not a general protection of medically afflicted persons . . . . If the employer discriminates against them on account of their being (or being believed by him to be) ill, even permanently ill, but not disabled, there is no violation"), *cert. denied,* 523 U.S. 1022 (1998). Here, the undisputed evidence indicates that plaintiff's limp did not affect any major life activities, as defined by the case law, or that it affected his job performance at Lovejoy or at any of his other previous jobs (Def.'s 56.1 St., ¶¶ 6-11).

disabled, plaintiff has provided no evidence that Mr. Mortenson was responsible for or involved in the decision by Lovejoy to terminate the plaintiff. Without such an evidentiary link, there can be no liability against Lovejoy under the ADA.

## CONCLUSION

For the reasons given above, the Court grants defendant's motion for summary judgment (doc. # 16) and directs the entry of summary judgment in favor of the defendant on Counts I and II. We dismiss Count III without prejudice to refiling the claim in state court. The state law claim in Count III depends upon facts that are distinctly different from those necessary to resolve the two federal claims asserted in Counts I and II. Therefore, there would be no efficiency in this Court's resolution of the state law claim at this time.

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: May 26, 2004**